**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**BLUSKY RESTORATION CONTRACTORS, LLC,**

**Plaintiff,**

**v.**

**LABOR SOURCE, LLC,**

**Defendant.**

**Case No. 2:24-cv-02572-HLT**

# MEMORANDUM AND ORDER

Plaintiff BluSky Restoration Contractors, LLC is a general contractor. Defendant Labor Source, LLC is a company that provides temporary workers. Plaintiff and Defendant entered into an express written contract for the provision of workers on various projects. The workers on one such job later sued both Plaintiff and Defendant for wage violations in a class-action lawsuit. Plaintiff and Defendant settled with those workers. Plaintiff now sues Defendant and argues that Defendant is obligated to indemnify it for the costs incurred by Plaintiff in the class-action lawsuit. Plaintiff relies on quasi-contract and equitable claims.

There is an express contract between the parties. It does not require Defendant to indemnify Plaintiff. The only indemnification provision in the contract goes the other way and requires Plaintiff to indemnify Defendant under certain circumstances. Because an express contract governs and does not provide the relief sought, Plaintiff cannot succeed on its claims for implied contract, implied indemnity, or promissory estoppel. The Court therefore grants Defendant's motion for summary judgment (Doc. 74), denies Plaintiff's motion for summary judgment (Doc. 78), and enters judgment in favor of Defendant. Defendant's motion to exclude expert testimony (Doc. 76) is denied as moot and without prejudice.

## I. BACKGROUND[1]

Plaintiff is a national restoration contractor. DSOF 1; PSOF 1. Defendant is a temporary labor staffing agency that provides unskilled and semi-skilled workers. DSOF 3; PSOF 2. Part of Defendant's sales pitch is that "with us you could ramp up and down your labor as needed per your production needs." Doc. 83 at 17 (additional fact 23 by Plaintiff). The two companies have had a long-standing business relationship over the years. PSOF 3.

On September 25, 2013, the parties entered into a contract for Defendant to provide temporary workers to Plaintiff. DSOF 5; Doc. 73 at 2 (stipulation iii). The 2013 Agreement generally governed the parties' obligations. Doc. 73 at 2 (stipulation iv); PSOF 9. The 2013 Agreement listed a billing rate and said that the "billing rate above includes all wages, worker's compensation premiums, unemployment insurance, payroll taxes, and all other employer burdens; recruiting, administration, payroll funding, and liability insurance (….no hidden costs!)." PSOF 5-6. From time to time, the parties would modify the rates for certain projects or agree that Plaintiff would provide training or protective equipment to the workers on a particular project. DSOF 6; Doc. 73 at 2 (stipulation iv). The 2013 Agreement prohibited Plaintiff from hiring any of Defendant's workers. PSOF 7.

The parties did not execute any new or updated agreements between 2013 and 2017. DSOF 7; Doc. 73 at 2 (stipulation v). The 2013 Agreement required Plaintiff to indemnify Defendant under certain circumstances. DSOF 8. But it did not contain any express provision that required Defendant to indemnify Plaintiff. DSOF 9.

---

[1] The following background includes the undisputed facts in the parties' summary-judgment briefing, Doc. 85 (Defendant's brief, referenced by "DSOF"), Doc. 79 (Plaintiff's brief, referenced by "PSOF"), and the factual stipulations in the Pretrial Order, Doc. 73.

In August 2017, the parties agreed Defendant would provide workers for a project in Minnesota called the Weyerhaeuser Project. DSOF 10; PSOF 20. The 2013 Agreement governed the Weyerhaeuser Project, except the parties agreed to a different rate that was reflected in invoices. DSOF 6, 11; PSOF 8; Doc. 73 at 2 (stipulation vii); *see also* PSOF 21.

Defendant provided workers for the Weyerhaeuser Project from August 2017 through March 2018. DSOF 13; PSOF 23. Defendant provided lodging and travel for the workers. DSOF 14; PSOF 16, 24; Doc 73 at 3 (stipulation x). The hours worked were tracked by both parties through Plaintiff's daily sign-in sheets and Defendant's weekly timesheets. DSOF 15; PSOF 25; Doc. 73 at 3 (stipulation xi). A function of the timesheets was so Defendant knew how much to bill for the workers' time and for Plaintiff to verify against its invoices. PSOF 10.

Plaintiff had custody, care, and control of the Weyerhaeuser Project worksite. DSOF 17; Doc. 73 at 3 (stipulation xiii). It provided safety training and protective equipment to the workers. DSOF 18; Doc. 73 at 3 (stipulation xiv). And Plaintiff controlled the means and method of work done. DSOF 19; Doc. 73 at 3 (stipulation xv). Defendant paid the workers an hourly rate and overtime as reflected on the timesheets and daily sign-in sheets; Plaintiff did not make payments to the workers. DSOF 16; PSOF 11; Doc. 73 at 3 (stipulation xii). If a worker had a complaint about pay, they were instructed to contact Defendant. PSOF 15 (including response).

On July 23, 2019, the workers on the Weyerhaeuser Project filed a class and collective action against Plaintiff and Defendant. DSOF 20; PSOF 26. The workers alleged Plaintiff and Defendant were their joint employers and, as joint employers, violated the FLSA and Minnesota wage and labor laws by underreporting the hours worked. DSOF 21; PSOF 27; Doc. 73 at 3 (stipulation xvii). The workers also asserted claims against Plaintiff separately. DSOF 22. The claims in the class action included unlawful reduction of hours, failing to pay for all time worked,

not compensating workers for donning and doffing protective equipment, making improper deductions, requiring workers to incur travel and lodging expenses, and not reimbursing workers for steel-toed shoes and other expenses. PSOF 28.

Plaintiff and Defendant denied the allegations against them in the class action. DSOF 23; PSOF 29; Doc. 73 at 3 (stipulation xviii). Plaintiff denied it employed the temporary workers who brought the class action, including as a joint employer with Defendant. PSOF 30; Doc. 73 at 4 (stipulation xix). Plaintiff and Defendant entered a joint defense agreement and jointly defended the class action. DSOF 24; PSOF 31; Doc. 73 at 4 (stipulation xx).

The parties to the class action (the workers, Plaintiff, and Defendant) eventually reached a settlement for $1,150,000. DSOF 26; PSOF 33. Plaintiff agreed to fund $900,000 of the settlement. DSOF 27; PSOF 37. Defendant agreed to fund $250,000 of the settlement. DSOF 28; PSOF 38. The parties settled the class action before the court made any determination about the claims or defenses in the case, including whether Plaintiff and Defendant were joint employers of the workers on the Weyerhaeuser Project. DSOF 31; PSOF 40; Doc. 73 at 4 (stipulation xxvi). Neither Plaintiff nor Defendant has identified any specific violations of the FLSA or state law in relation to the Weyerhaeuser Project. DSOF 32 (including response). Plaintiff assumes the allegations arose from Defendant's conduct but could not identify how. *See* DSOF 33.

Plaintiff cannot identify a written agreement in which Defendant agreed to or is obligated to indemnify Plaintiff for the class action. DSOF 34. Plaintiff is unaware of any oral promise or agreement in which Defendant agreed to indemnify Plaintiff for the class action. DSOF 35.

Plaintiff doesn't know if it reviewed or relied on Defendant's website before executing the 2013 Agreement or before the Weyerhaeuser Project in 2017. DSOF 37. However, the representative for Plaintiff named in the 2013 Agreement was very thorough. *Id.* (including

response). Plaintiff is unaware if the representations included on Defendant's website in 2024 were there in 2013 or 2017. DSOF 38.[2]

Plaintiff currently asserts three claims: Count II, breach of implied contract; Count III, implied indemnity; and Count IV, promissory estoppel. Doc. 73 at 9-10. Plaintiff is no longer pursuing a breach of contract claim as asserted in Count I. *Id.* at 9 n.1. Plaintiff seeks damages in this case of $1,563,323.91, which consists of the amount it contributed to the class-action settlement and its legal fees incurred in defending the class action. PSOF 42.

## II. STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation and citation omitted).

## III. ANALYSIS

Plaintiff asserts three claims: breach of implied contract, implied indemnity, and promissory estoppel. Doc. 73 at 9-10. Plaintiff no longer asserts a claim for breach of contract. *Id.* at 9 n.1. Plaintiff moves for summary judgment on each claim. The underlying theory for each claim is that Defendant agreed to take responsibility as the sole employer of the temporary workers

[2] The exhibit reflecting Defendant's website was last visited in December 2024. Doc. 79-13.

on the Weyerhaeuser Project, that Defendant's failure to do so led to the class-action lawsuit, and that Defendant is therefore liable to Plaintiff for the costs Plaintiff incurred defending and settling the lawsuit. Plaintiff argues there is no genuine issue of fact on these claims.

Defendant also moves for summary judgment. Doc. 74. Defendant argues Plaintiff's claims are preempted by the FLSA and the Supremacy Clause, that the existence of an express contract (the 2013 Agreement) precludes Plaintiff's claims, and that Plaintiff lacks evidence to meet the elements of all three claims.[3]

The Court finds that Defendant is entitled to summary judgment. Plaintiff's claims are precluded because of the existence of an express contract. That express contract—the 2013 Agreement—does not require Defendant to indemnify Plaintiff. And there is no evidence that the parties modified or reached a different agreement regarding indemnification.

### A. Breach of Implied Contract

Plaintiff contends in its implied-contract claim that the 2013 Agreement, "combined with the course of conduct between the parties during their lengthy business relationship, created an implied contract applicable to the Weyerhaeuser Project." Doc. 79 at 21.[4] As the Court noted in ruling on the motion to dismiss, Plaintiff's contract allegations were and remain somewhat confusing. *See* Doc. 37 at 7. Plaintiff seeks to enforce an implied contract between the parties about the provision of workers for the Weyerhaeuser Project, but not the 2013 Agreement (which covered the same topic), even though the implied contract is based in part on the 2013 Agreement. *See* Doc. 79 at 22 (relying on the 2013 Agreement to lay out the parties' obligations under the

[3] Defendant also moves to exclude expert testimony. Doc. 76. Because the Court grants Defendant summary judgment, the motion to exclude is denied as moot.

[4] Plaintiff also relies on statements on Defendant's website. But Plaintiff has no evidence that it viewed it in 2013 or 2017 or what the website even said in 2013 or 2017. DSOF 37-38.

alleged implied contract). Plaintiff also relies on testimony generally explaining Defendant's business and on testimony explaining expectations Plaintiff had. But it is also not clear how or why Plaintiff believes the implied contract they seek to impose differs in any material respect from the 2013 Agreement. At bottom, Plaintiff does not dispute the existence of the 2013 Agreement or dispute that it covered the parties' obligations regarding the Weyerhaeuser Project.[5] *See* Doc. 73 at 2 (factual stipulations regarding the 2013 Agreement).

Under both Kansas and Minnesota law,[6] "the existence of an express contract precludes the implication that an implied contract exists covering the same subject matter." *MidAmerica Div. Inc. v. First Health Grp. Corp.*, 2024 WL 4894160, at *4 (D. Kan. 2024); *Zwygart v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Kan.*, 483 F.3d 1086, 1094 (10th Cir. 2007) ("It has long been Kansas law that the existence of an express agreement precludes the idea of the existence of an implied one." (internal quotation and citation omitted)); *Scarborough v. Federated Mut. Ins. Co.*, 2015 WL 1470097, at *3 (D. Kan. 2015) ("[T]he existence of a written agreement may preclude the assertion of any claims based on theories of implied contract and unjust enrichment under Minnesota law."); *Reese Design, Inc. v. I-94 Highway 61 Eastview Ctr. P'ship*, 428 N.W.2d 441, 446 (Minn. Ct. App. 1988) ("Where an express contract exists, there can be no implied contract with respect to the same subject matter.").

---

[5] Plaintiff cites some testimony in its motion to suggest "that the 2013 Rate Agreement did not represent the full contract between BluSky and Labor Source that would have governed the Weyerhaeuser Project." Doc. 79 at 21. But the cited testimony is not necessarily so clear. And the facts cited in support of that contention (Plaintiff's own PSOF 4 and 8, both undisputed) specifically state that the 2013 Agreement "was applicable and the operative agreement during the time period of the Weyerhaeuser Project" and that the "terms of the 2013 Agreement governed the parties' agreement for Labor Source to provide temporary laborers for the Weyerhaeuser Project."

[6] The parties dispute whether Kansas law or Minnesota law controls, although both argue that they win either way. The Court does not need to decide what law controls because the law is the same for purposes of the dispositive analysis.

Here, it is undisputed that the 2013 Agreement governed the parties' obligations regarding Defendant providing temporary workers to Plaintiff. *See* Doc. 73 at 2 (stipulations iii and iv). It is undisputed that the parties "did not execute a new or updated agreement between 2013 and 2017." *Id.* (stipulation v). And it is undisputed that the "terms of the 2013 Agreement governed the parties' agreement for [Defendant] to provide temporary laborers for the Weyerhaeuser Project, except that the parties agreed to different rates for the laborers" as reflected in the invoices. *Id.* (stipulation vii). The undisputed existence of an express contract (the 2013 Agreement) covering the Weyerhaeuser Project precludes any claim based on an implied contract under both Kansas and Minnesota law. This entitles Defendant to summary judgment on Plaintiff's implied-contract claim.

To the extent Plaintiff is contending that the 2013 Agreement was modified, that does not help its case. The parties did agree to modify the 2013 Agreement but only regarding the specific rate for workers on the Weyerhaeuser Project and the provision of protective equipment. In its reply brief, Plaintiff argues that the parties' course of conduct modified the existing agreement between the parties.[7] These so-called modifications are based on testimony that Defendant pitched its services as allowing clients to "ramp up and down your labor as needed," that Defendant handled the payroll and related matters, and that Defendant could reduce administrative burdens. Doc. 91 at 10-11. Plaintiff then concludes that these promises "created an obligation for [Defendant] to defend and indemnify [Plaintiff]" for claims arising out of the class action. *Id.* at 11-12.

---

[7] Plaintiff's motion only argues that a new implied contract was <u>created</u>. It doesn't allege the 2013 Agreement was <u>modified</u> (other than as to the rates, which is undisputed). The reply brief muddies things a bit, with Plaintiff alternating between claiming that an implied contract was created and that the 2013 Agreement was modified. *Compare* Doc. 79 at 21 *with* Doc. 91 at 8. Arguments raised for the first time in a reply brief are not proper.

Plaintiff cites no authority for this logical leap. Regardless, the existence of the 2013 Agreement stands in the way. There is no evidence that the parties ever modified the 2013 Agreement as to indemnification. Importantly, the only indemnification obligation in the 2013 Agreement is that of Plaintiff in favor of Defendant, not the other way around. *See* DSOF 8, 9; *see also* Doc. 85-2 at 1 (2013 Agreement stating that Plaintiff "agrees to indemnify and hold harmless" Defendant for "any and all claims, damages or penalties, together with reasonable attorneys' fees" arising out of OSHA violations or "any prevailing wage law requirement . . . that was not disclosed in writing by [Plaintiff] to [Defendant] prior to the commence of work on such project"). Defendant had contractual obligations to manage the employment of the workers under the express terms of the 2013 Agreement,[8] but it was not contractually obligated to indemnify Plaintiff for claims brought against it. Even if the parties modified some parts of the contract, there is no evidence that they modified what the contract said about indemnification.

In sum, an express contract exists. The express contract applied to the Weyerhaeuser Project. It therefore governs any disputes the parties have about the Weyerhaeuser Project, including the class-action lawsuit. That express contract does not impose any obligation on Defendant to indemnify Plaintiff. Plaintiff cannot craft a different implied agreement to subvert the terms of the 2013 Agreement. Defendant is therefore entitled to summary judgment on Plaintiff's implied-contract claim.

---

[8] The 2013 Agreement states that the billing rate "includes all wages, worker's compensation premiums, unemployment insurance, payroll taxes, and all other employer burdens; recruiting, administration, payroll funding, and liability insurance (….no hidden costs!)." Doc. 85-2 at 1. It is also undisputed Defendant handled travel and lodging for the workers and payroll obligations. But this does not mean Defendant agreed to indemnify Plaintiff on any claims brought against Plaintiff by the workers.

**B. Implied Indemnity**

Plaintiff's next claim is for implied indemnity. Under Kansas law, implied indemnity is essentially just an implied-contract claim. *RLI Ins. Co. v. Russell*, 2015 WL 9455569, at *5 n.22 (D. Kan. 2015). Thus, a theory of implied indemnity cannot proceed where an express contract governs, for the same reasons discussed above. *See id.*

In Minnesota, indemnity "is the remedy securing the right of a person to recover reimbursement from another for the discharge of a liability which, as between himself and the other, should have been discharged by the other." *Johnson v. Johnson*, 902 N.W.2d 79, 85 (Minn. Ct. App. 2017) (internal quotation and citation omitted). Common-law indemnity "arises when a party seeking indemnity has incurred liability due to a breach of a duty owed to it by the one sought to be charged, and such a duty may arise by reason of a contractual obligation." *In re RFC & RESCAP Liquidating Tr. Action*, 332 F. Supp. 3d 1101, 1128-29 (D. Minn. 2018). Implied indemnity is an equitable claim under Minnesota law and the existence of an express contract generally precludes recovery on equitable claims. *See Olympus Ins. Co. v. AON Benfield, Inc.*, 711 F.3d 894, 899 (8th Cir. 2013) ("Under Minnesota law, equitable relief cannot be granted where the rights of the parties are governed by a valid contract." (internal quotation and citation omitted)); *see also In re RFC*, 332 F. Supp. 3d at 1129 ("Indeed, when the duty to indemnify arises from contractual language, it generally is not subject to equitable considerations; rather, it is enforced in accordance with the terms of the contracting parties' agreement.").

As discussed above, the parties had an express contract—the 2013 Agreement. That contract governed Defendant's provision of workers to Plaintiff. But it does not obligate Defendant to indemnify Plaintiff. Plaintiff's argument essentially seems to be that it ought to because Defendant was the real employer of the workers. *See* Doc. 79 at 30 (arguing that Defendant "as

the sole employer, had the obligation to cover any liability incurred by [Plaintiff] in addressing a lawsuit to which it did not belong"); Doc. 83 at 12 (arguing that Defendant was required "to take total responsibility for employer/employee claims").[9] But as with Plaintiff's other claims, the Court cannot write into the 2013 Agreement an obligation (indemnification) that the parties did not see fit to include. The Court understands Plaintiff believes it was unfair for it to be sued in the class action, and it believes Defendant should have taken the blame. But the fact that Defendant was responsible for payroll and other employer obligations to the workers does not mean that Defendant owed Plaintiff any duty of indemnification. And it would not be proper to imply such an obligation when the parties did not include it in their express contract.

Defendant is entitled to summary judgment on Plaintiff's implied-indemnity claim.

**C. Promissory Estoppel**

Plaintiff's final claim is for promissory estoppel. "Promissory estoppel developed as a substitute for consideration." *Decatur Cnty. Feed Yard, Inc. v. Fahey*, 974 P.2d 569, 577 (Kan. 1999). An express contract precludes a promissory-estoppel claim under both Kansas and Minnesota law. *Tripoli Mgmt., LLC v. Waste Connections of Kan., Inc.*, 2011 WL 2897334, at *16 (D. Kan. 2011) ("It is hornbook law that quasi-contractual remedies, such as unjust enrichment and promissory estoppel, are unavailable when an enforceable express contract regulates the relations of the parties with respect to the disputed issue." (internal quotation and citation omitted)); *HomeStar Prop. Sols., LLC v. Safeguard Props., LLC*, 370 F. Supp. 3d 1020, 1028 (D. Minn. 2019) ("As such, Minnesota courts routinely bar promissory estoppel claims as a matter of law when there is no dispute that a written contract governs the at-issue conduct.").

[9] The court in the class-action lawsuit never decided whether the parties were joint employers.

Because it is undisputed that the 2013 Agreement governs the Weyerhaeuser Project, Plaintiff's claim for promissory estoppel fails for the reasons discussed above.

## IV. CONCLUSION

THE COURT THEREFORE ORDERS that Defendant's Motion for Summary Judgment (Doc. 74) is GRANTED. The Clerk shall enter judgment in favor of Defendant on all claims.[10]

THE COURT FURTHER ORDERS that Plaintiff's Motion for Summary Judgment (Doc. 78) is DENIED.

THE COURT FURTHER ORDERS that Defendant's Motion to Exclude Expert Testimony (Doc. 76) is DENIED AS MOOT and WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: September 30, 2026

/s/ *Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE

[10] The Court does not reach the additional arguments in Defendant's motion because the existence of the 2013 Agreement precludes all of Plaintiff's claims.